-PS-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHARON L. BARNETT,

             Plaintiff,

        -v-                              06-CV-6616T
                                         **ORDER**
COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

_____

INTRODUCTION

      Plaintiff pro se Sharon L. Barnett ("Barnett"), brings this
action pursuant to the Social Security Act, (codified in relevant
parts at 42 U.S.C. § 401 et. seq. and 42 U.S.C. § 1381 et. seq.)
claiming that the Commissioner of Social Security improperly denied
her application for disability insurance.[1]  Specifically, Barnett
alleges that the decision of an Administrative Law Judge ("ALJ")
was erroneous and not supported by either the substantial evidence
on the record or the applicable law.  Barnett requests that the
Court modify the decision to grant monthly benefits to her, or, in
the alternative, to remand the action to the defendant for
reconsideration of the evidence.

      The Commissioner moves for judgment on the pleadings on
grounds that the ALJ's decision was correct, was supported by

_____

      [1] This case (formerly civil case 03-CV-0407) was transferred to the
undersigned by the Honorable Richard J. Arcara, Chief Judge, United States
District Court for the Western District of New York by Order dated December 4,
2006.

substantial evidence, and was made in accordance with applicable law.  Plaintiff pro se did not reply to the motion for judgment on the pleadings.  For the reasons discussed below, the Commissioner's motion for judgment on the pleadings is denied, and the case is remanded for calculation of benefits.

BACKGROUND

On October 12, 1999, plaintiff Sharon Barnett, then aged 51 years old, applied for Social Security disability benefits and supplemental income security benefits claiming that she became disabled on August 1, 1996 due to rheumatoid arthritis, cervicalspine fusion, allergies, migraines, depression, and gastroesophogeal sphincter GERD.  These conditions limited her ability to work due to it being painful to use hands, arms, to sit or walk very long, with frequent fevers and illnesses and lowered resistance to infections, much swelling and tenderness in joints and muscles which cause frequent, general feelings of malaise (T-62)[2].

---

[2]Therein she indicated that her illnesses, injuries or conditions caused her to work fewer hours, change her job duties, and make job-related changes. She missed a lot of work due to illness, flare-ups, doctor visits, etc.  She needed to be removed from areas that aggravated her allergies and she received a special chair to help cope with spinal pain, etc.  Additionally she had others carry for her or alternate jobs to avoid physical and emotional stress (T-63). Barnett's application made clear that the she had had a problem with keyboarding, writing and "in your face" confrontations, and although she indicated that she lifted up to 50 pounds and frequently lifted 25 pounds (T-64) as a welfare examiner and employment specialist, she had difficulty doing so and asked others to help her (T-63).  She had already been referred by her primary physician to a rheumatology specialist for pain and swelling symptoms (T-65).  Barnett described the limitations in her activities of daily living, such as vacuuming and laundry, driving being difficult because her hands were sore and swollen and sensitive to the cold and wind.  Frequently she used a cane for walking or on stairs because her right knee was painful and swollen.  She was not sleeping

2

Barnett's application was denied initially and on reconsideration.  In her reconsideration disability report on April 24, 2000 she informed the Social Security Administration that her treating physician had changed her diagnosis from rheumatoid arthritis to fibromyalgia and osteoarthritis, that her joint and muscle pains were worse than before and that they were only partially controlled by medication.[3]

She timely filed an application for an administrative hearing on September 11, 2000 in which she asserted that she suffers chronic pain and weakness and extreme tiredness to the point of exhaustion, and that there was evidence that was new or previously ignored that involved a change in diagnosis and medications (T-34).

A hearing took place before Administrative Law Judge (ALJ) Robert T. Harvey on November 20, 2001.  Plaintiff was represented at the hearing by Mark Laudisio, Esq.

---

well, and awoke 4 to 5 times per night, alternating sleeping in her bed and in a recliner.  She could not work in her garden as she had for years, or process canning foods.  She could not play with her grandchildren as she would like or carry the babies more than a short distance.  Even dressing and opening doors had become more difficult (T-70). The disability interviewer's observations included that Barnett was cooperative, her walk was stiff and slow, she had difficulty opening a door, and that she had difficulty standing and walking (T-74).

[3]She said that she was tired most of the time and ached so much that she could not work for more than 10-15 minutes at a time, spends most of her time in the recliner trying to get warm or rest and that she could not keep up with any housework or tasks without help (T-76).  She further indicated that it was difficult to bend, to walk, to lift or carry without pain.  She was tired and discouraged all the time.  She needed help to clean, to shop, to do daily tasks. She could not stand for long, or sit without needing to move, or stand without pain. She had experienced changes in her activities in that she almost always uses a cane to walk, she experiences frequent loss of concentration or focus, causing her delays in her activities, and she must avoid cold, or even cool temperatures to keep her symptoms from flaring (T-78).

In a December 19, 2001 decision, Administrative Law Judge Robert T. Harvey found that although Barnett suffered from "an anterior cervical disc and fusion, degenerative disc disease of the lumbar spine and fibromyalgia" (T-18), impairments that are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(B) and 416.920(b), claimant's allegations regarding her limitations and disability were not entirely credible.  He found that claimant retains the residual functional capacity to perform light work which is diminished by additional limitations, and retains the ability to perform her past relevant work as a welfare examiner and employment specialist as she performed those jobs.  He found that she has not been under a "disability", as defined in the meaning Social Security Act, at any time through the date of the decision, and is not entitled to a period of disability and disability insurance benefits under Sections 216(i) and 223, respectively, of the Social Security Act.

Plaintiff was represented at the administrative hearing by an attorney.  Plaintiff's attorney objected to the ALJ's findings in a letter dated December 18, 2002, on grounds that:

(1) the substantial evidence in the record supports a finding of disability based on the treating physician's diagnosis of fibromyalgia (Ex. 16F, page 12-13g) and her other physical limitations from her severe impairments, in addition to migraine headaches, dizziness, nausea, and diminished mental capacity caused

by her medical impairments and the side effects of her prescribed
medications (T-383).

(2) The ALJ failed to consider many of the factors in 20
C.F.R. § 404.1529(c) in the findings made concerning the
credibility of the claimant. He did not address the type, dosage,
effectiveness, and side effects of any of the claimant's
medications, which alleviate her pain and muscle spasms or that her
medications cause her a great deal of nausea, lethargy and
diminished mental capacity, and her ability to perform even routine
daily activities are impaired as a result of her medications (T-
384).

(3) The ALJ failed to analyze how, despite claimants's medical
impairments, she retains the ability to perform sustained physical
and mental activities in a work setting on a regular and consistent
basis as set forth in SSR96-6p and 20 C.F.R. §404.1545(b) and (c),
since due to claimant's medications her mental functioning at best,
cannot withstand the mental alertness required by any type of
regular employment(T-384).

(4) The ALJ failed to include in his RFC findings all of the
relevant evidence in the record pursuant to SSR96-8p.
Specifically, the ALJ does not address the medical history,
laboratory findings, medical source statements of the claimant's
most severe medical impairment, her diagnosis of fibromyalgia. The
ALJ largely failed to address the bulk of the 87 pages of Exhibit

16F.  The ALJ failed to analyze the evidence from 1999 through 2000 relating to her more recent diagnosis of fibromyalgia.  The ALJ's analysis does not address why the evidence concerning claimant's fibromyalgia does not support a finding of disability (T-384).

Barnett's appeal of the ALJ's decision to the Social Security Appeals Board was denied on March 21, 2003, and on May 23, 2003, plaintiff filed this action.  The Commissioner's position is that the ALJ's decision is supported by substantial evidence and should not be overturned (Doc. # 15).

<u>DISCUSSION</u>

I.   <u>Jurisdiction and Scope of Review</u>

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v NLRB</u>, 305 U.S. 197, 229 (1938).  Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. <u>See</u>, <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de

6

novo).  The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached."  Lynn v. Schweiker, 565 F.Supp 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that her decision is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the court is convinced that "the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," judgment on the pleadings may be appropriate.  See, Conley v. Gibson, 355 U.S. 41, 45-46 (1957). For the reasons discussed below, the Commissioner's motion for judgment on the pleadings is denied, and the case is remanded for calculation of benefits.

II.  <u>Substantial Evidence in the Record Does Not Support the ALJ's Conclusions</u>

Plaintiff's conditions are such that she experienced significant pain, joint swelling and stiffness in various parts of her body over a period of years.  She had experienced a fall and

sustained injuries to her back, the cervical spine injury resulted in spinal fusion which appeared to be successful, the lumbar spine injury did not appear to require surgical intervention.  Over the period of time that plaintiff expressed consistent complaints of pain, swelling and stiffness, her treating physicians were at a loss to explain them.  Through a period of approximately two years, during which time plaintiff was referred to a rheumatologist by her primary physician, she was tested for many things (See, footnote 4, infra.).  Her primary physician diagnosed and treated her for diabetes and TMJ.  The specialist diagnosed and treated her for hyperthyroidism.  He experimented with different diagnoses and treatments in a diligent attempt to determine what caused plaintiff's pain and swelling symptoms, including a diagnosis of sero-negative rheumatoid arthritis treated with methotrexate.  A few months before plaintiff's administrative hearing on her application for disability benefits, the rhuematologist diagnosed her with fibromyalgia and osteoarthritis with myofacial pain.

Throughout this period plaintiff's primary and specialist treating physicians treated her with a variety of medications for diabetes, hyperthyroidism, depression, pain, stiff joints and difficulty sleeping.

The ALJ found that the medical evidence indicated Barnett has the following severe impairments since her alleged disability onset date of August 1, 1996: anterior cervical disc and fusion, a

degenerative lumbar spine and fibromyalgia (T-15).  There is no indication of what evidence he relied on to make these findings. He noted that Barnett also complained of fatigue, vertigo, difficulty bending, overall joint and muscle pain and swelling, migraine headaches, depression, insomnia, frequent loss of concentration, inability to sit or walk for extended periods, as well as low back, neck, shoulder, hip, arm, wrist and ankle pain, with treatment including an anterior discectomy and fusion, physical therapy, use of a cane, cervical orthosis, lumbosacral support, injection therapy, methotrexate therapy, as well as the medications Neurontin, Darvocet, Glucophage, Ambien, Synthroid, Meclizine, Ultram, Alexa, Prevacid, Trazodone, Paxil, Cyclobenzaprine, Celebrex and Vioxx, among others (T-15).

Yet, the ALJ found that the medical evidence did not reveal that claimant has suffered from any impairments or mental conditions that have been disabling in nature or have prohibited her from performing sustained substantial gainful activity since her alleged disability onset date of August 1, 1996 (T-15).

The ALJ then cited the reports of the treating physicians in a manner that limited his discussion to what conditions appeared to not be indicated by laboratory and clinical results, and failed to discuss the treating physicians' diagnoses and treatment of the conditions plaintiff did have, such as fibromyalgia and osteoarthritis, and the treatments thereof (T-15-16).

The ALJ emphasized only those facts from the voluminous medical evidence, out of context, which supported his conclusion that Barnett was not disabled.  For example, the ALJ cites to the conclusion that Barnett was doing "wonderfully" without noting or considering that she was subsequently rushed to the emergency room after two weeks of severe back pain became unbearable (T-15, citing Ex. 6F; T-340-42).

The ALJ ignored the context of the June 8, 2000 progress notes of Dr. Van De Wall, Barnett's treating rheumatologist, which he cited only for the conclusion that she was doing very well overall, and that she was not taking any anti-inflammatory analgesic medication (T-16, citing Ex. 11F).  This is the ALJ's sole reference to the medical records of Dr. Van De Wall, the specialist Barnett had been referred to for her joint pain and inflammation and by whom Barnett had been treated from June of 1999 (T-194) until, at least, 2002 (T-390).  She was seen in June of 1999 for, at that time, a six to nine month history of increasing aches and pains that predominantly affected as she describes in her left hip, her left knee, both hands and both feet (T-194), and ultimately diagnosed her with fibromyalgia and osteoarthritis with myofacial pain.[4]  The ALJ cited parts of the June, 2000 positive evaluation

---

[4]He assessed that there was palyarthralgia with historical features suggestive of a systemic process.  He decided to proceed conservatively, and treated her for hypothyroidism.  With no laboratory confirmation of rheumatoid arthritis, he decided to treat her with Plaquenil for sero-negative rheumatoid arthritis because her symptomatology remained the same (T-197). This was not of benefit to her; nor was ibuprofen.  In November of 1999 she reported worse pain

and telescoped a year and a half of recurring pain and fluctuating symptoms, generally on increasing doses of Neurontin and other medications, as the final evaluation of her condition.  And he did this in the face of her testimony that the symptoms continued (T-422).  He then cited the evaluation of the consult on June 23, 2000 (T-16, citing Ex. 12F) that claimant could perform all activities, and did not exhibit any significant tender points. The ALJ made no attempt to reconcile this evaluation with that of the

---

of her MCP and PIP joints, as well as her shoulders, elbows, and knees in particular.  She reported significant swelling of the right knee and was using a cane. He found tenderness again overlying the MCP and PIP joints, other signs normal. He was confident enough in the diagnosis of sero-negative RA to discuss the risks and benefits of methotrexate, which they started, although he tried other things as well, including Celebrex.  She discontinued Flexeril at night, and he added amitriptyline, (in addition to the Paxil she was already taking )(T-198).  January, 2000, she had back problems that had not been a prominent feature previously, as well as excessive hot and cold sensations, although previous EMG nerve conduction studies had been normal.  More sense of myofascial like features.  Diagnosis shifting to Osteoarthritis with accompanied myofascial pain syndrome.  Discontinued methotrexate. Changed from Celebrex to Vioxx.  Swithched from amitriptyline to trazodone.  Explained myofascial pain and fibromyalgia and discussed trying Neurontin, even though symptoms had not improved with numerous nonsteroidal and narcotic therapies (T-199).  April 2000 she had improved somewhat on Neurontin, still reporting pain of her right knee in particular, but both knees troublesome.  Achieves some relief when off her feet.  Not reporting swelling of any joints.  Found tender points consistent with fibromyalgia within the upper extremities and along the paraspinal region of the axial skeleton. Particularly the right knee exhibits a marked bony enlargement.  Marked medial joint space tenderness.  Crepitation noted.  No warmth, synovitis, or effusion. Left knee to a lesser extent.  Mild valgus deformities noted bilaterally.  After knee x-rays, evidence of medial joint space narrowing and medial joint space subchondral sclerosos.  May be a hint of effusion on right knee. Generalized myofascial pain, marked improvement with trazodone and 100mg t.i.d. Neurontin. Baseline features of osteoarthritis which have failed to respond to nonsteroidal therapy. If not improvement with resume Celebrex, and Lortab or another narcotic analgeisc for pain relief(T-200).  Very careful examination and recording! June 8, 2000 (the only medical record of the treating rheumatologist cited by the ALJ), Doing very well on 200 mg t.i.d. Neurontin, and trazodone at nightttime. Has felt well. Improved spirits about her condition, quite satisfied with her current treatment program, although she might feel better if the Neurontin was increased to 300 mg t.i.d.  Trying supplements of vitamins.  Knees doing well following corticosteroid injections.  No active synovitis, there is bony enlargement in both knees with crepitation to passive maneuvers.  Does still exhibit the tender points of fibromyalgia.  Increased Neurontin to 300 mg t.i.d. Trazodone at 50 mg q.h.s.  She is doing well overall.  She is not currently taking any anti-inflammatory analgesic medication at this time (T-201).

rheumatologist, whom he had just cited for the positive assessment, even though the rheumatologist had determined that Barnett still exhibited the tender points of fibromyalgia and bony enlargement of both knees with crepitation, only two weeks earlier.  Van De Wall had, at that time, increased the Neurontin to 300 mg t.i.d. (T-201, T-220).[5]

The ALJ clearly chose to take from his reading of the reports that claimant's symptoms for all of her conditions were under control, with no loss of function despite the many contradictions and inconsistencies between the parts of the record cited and the rest of the record.  The ALJ was obligated to develop the record regarding areas that were lacking, and rather than seek additional exams or records from claimants treating physician's he resolved all doubts against her, in the face of a record that demonstrated significant impairment due to pain, stiffness, fatigue and depression.

The ALJ found plaintiff's allegations of disability inconsistent with her testimony regarding her activities of daily living.  He also found that Barnett's testimony of the severity of her symptoms, that she has headaches three times weekly, constant pain in her shoulders, hips, arms and wrists, not supported by the

---

[5]And shortly after the hearing in 2001 Barnett complained to Dr. Depner that back pain was interfering with her sleep. Her symptoms were not under control.  She complained that she was living on Darvocet and it was not working as well even though she had had physical therapy with Dr. Van De Wall in March and April, was "markedly tender at the sacrum with mild right SI tenderness (T-390).

record (T-16).  He said he found Barnett's allegations regarding her limitations and disability not entirely credible "for the reasons set forth in the body of this decision".  However, the only reference to plaintiff's credibility in the body of the decision relates to her testimony of her subjective symptoms and her activities of daily living (T-16).  It is clear that the ALJ rejected plaintiff's testimony of her subjective symptoms, despite support for them in the record in the form of regular and sustained treatment of them by her treating physicians, and a consistent recitation of her progressing symptoms and progressively limited activities of daily living contained in the record.  The ALJ does not explain what he finds inconsistent with either her testimony or the record as required by SSR96-8p. See also, Page v. Celebrezze, 311 F.2d 757, 762-63 (2d Cir.1963)(The ALJ was required to explain what weight, if any, she assigned to the treating physician's opinions).

The ALJ indicated that he had carefully considered all of the medical opinions in the evidence of record regarding the severity of the claimant's impairments (T-18).  "The claimant retains the residual functional capacity to perform light work which is diminished by additional limitations outlined in the body of this decision (T-18).  There is, however, **no** indication in the body of the decision where the ALJ derived his finding regarding the additional limitations.  There is also no indication in the body of

13

the decision from where the ALJ derived his finding regarding Barnett's impairments. He does not cite the treating physicians' medical opinions or records to support them. Plaintiff is left with no indication on the record of what testimony or evidence the ALJ relied upon in reaching his findings, and which evidence he discounted and why. SSR96-8p (Narrative Discussion Requirements...where symptoms, such as pain, are alleged, there must be a thorough discussion of all evidence; resolution of inconsistencies; a logical explanation of the effects of the symptoms on ability to work -- The RFC assessment must discuss why reported symptom-related functional limitations can or cannot reasonably be accepted as consistent with the medical and other evidence).

The ALJ found that Barnett testified that she cleans, cooks, does laundry with her husband's help, vacuums, watches television, shops, attends church and drives, and that Barnett's allegations of disability are inconsistent with her activities of daily living. To the extent that the ALJ affirmatively found Barnett's allegations inconsistent with her testimony regarding her activities of daily living, he disregarded other parts of her testimony and the record, including that she needed to rest frequently during those activities, required the assistance of

others to do those activities, and at some points could not do any of them (T-422, T-80)[6]

While the ALJ acknowledged Barnett's testimony that she has headaches three times weekly, constant pain in her shoulders, hips, arms and wrists, he held that there was nothing in the record to support the severity of the symptoms about which she testified. The ALJ, however, failed to appreciate that the record discloses that Barnett was treated for disorders that typically produce the symptoms of which she complained.

The disease of fibromyalgia is characterized as a chronic, degenerative disorder which causes pain, tenderness and stiffness in the fibrous connective tissues in one's body. The Merck Manual, 1271 (15th ed. 1987). There is no cure for fibromyalgia and the condition is still poorly understood within the medical community. Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004). Because it is a particularly difficult disease to diagnose, (See Green-Younger v. Barnhart, 335 F.3d 99 (2d Cir. 2003)(finding that fibromyalgia is a condition that "eludes" objective measurement)) the Social Security Administration has promulgated special instructions for evaluating cases involving fibromyalgia. See SSA

---

[6]The third party questionnaire completed by Barnett's husband on July 17, 2000 indicates that claimant could shop, but she tires easily, her daughter helps carry her bags for her, and she can cook, but she plans things so she doesn't have to stand for too long. She does things around the house, but on a limited basis. He helps her. She has pain in her hips and joints and doesn't sleep well. She self taught herself to play the organ. She used to have a garden, now she has house plants. She sits and watches TV (T-80).

Memorandum, Fibromyalgia, Chronic Fatigue Syndrome, and Objective Medical Evidence Requirements for Disability Adjudication (May 11, 1998). Pursuant to the Administrations guidelines, "[a]n individual's symptoms and the effects of those symptoms on the individual's functional abilities must be considered both in determining impairment severity and in assessing the individual's functional capacity." Id. at 4. Moreover, in considering whether or not fibromyalgia is disabling under the guidlines, "[o]bjective findings are not required to find that an applicant is disabled." Green-Younger, 335 F.3d at 108 (citing Donato v. Sec. of Dep't. Of Health and Human Services, 721 F.2d 414, 418-9 (2d Cir. 1983)).

In the instant case, the ALJ failed to adequately consider and assign proper weight to the plaintiff's subjective complaints of pain resulting from her fibromyalgia. There is substantial evidence in the record to support the diagnosis of fibromyalgia, and the plaintiff's complaints of pain are entirely consistent with that diagnosis. I therefore find that the ALJ erred in not properly considering the plaintiff's subjective complaints in rendering his determination that plaintiff is not disabled.

Ultimately, the ALJ concluded that Barnett had the residual functional capacity (RFC) to lift/carry 20 pounds occasionally and 10 pounds frequently; sit 2 hours in an 8 hour day and stand/walk 6 hours in an 8 hour day; cannot climb ropes, ladders or scaffolds, or work in areas with unprotected heights, around heavy, moving or

dangerous machinery, or in areas where she would be exposed to cold or dampness; she has occasional limitations in the ability to push or pull with her upper extremities, bend, climb, squat, crawl, kneel, balance, finger and reach; she cannot engage in any repetitive neck or wrist motion.  The ALJ asserted that in assessing Barnett's residual functional capacity, he carefully considered all of the evidence of record; including the claimant's testimony and written statements, as well as the observations taken of claimant at the hearing.  Yet, there is no citation to, or discussion of, the record to support the ALJ's findings.  He has also carefully considered the assessments of the State agency review physicians, and gives them significant weight, given their consistency with the reports and opinions of the claimant's treating and examining physicians.  There is no discussion of what about these reports and opinions was consistent SSR96-8P.

The ALJ further concluded that, based on the testimony of the vocational expert that a person with the RFC determined by the ALJ above could perform Barnett's past relevant work as a welfare examiner and employment specialist as the claimant performed those jobs, Barnett retains the ability to perform her past relevant work.

However, a review of the transcript of the hearing support's the Court's determination that the ALJ rejected out of hand all of plaintiff's allegations of subjective complaints such as pain,

swelling, stiffness, fatigue (T-422), depression (T-419)and confusion which she attributed to the combination of the many medications she was prescribed and her depression over her condition(T-403).   In doing so, he ignored the treating physicians' records of treatment of those very symptoms.  There is no explanation in the decision of the reason for rejecting the evidence of the treating physicians' treatment for those symptoms. The ALJ completely disregarded all evidence of the course of diagnosis and treatment over a period of more than two years, including a combination of significant medications since 2000. This indicates that the ALJ did not rely on the record to make his findings.

This wholesale rejection of the plaintiff's subjective allegations, and records of the physicians' treatment thereof, is further demonstrated by the ALJ's questioning of the vocational expert (VE).  The ALJ posed a hypothetical to the VE based on the residual functional capacity the ALJ had determined, as is the normal examining techniques for a VE.  The VE testified that a person with such a RFC could perform the work of a welfare examiner and an employment specialist (T-426-428).  The ALJ then questioned the VE as to a person with the RFC the ALJ had hypothesized, plus additional limitations relating to plaintiff's subjective symptoms:

> Q  Okay.   And if I was to add to that hypothetical, *assigning full credibility to the testimony of claimant concerning her symptoms of pains as a result of her osteoarthritis and the*

>    *fibromyalgia* (emphasis added), which she descried
>    as constant daily pain in both arms, shoulders,
>    daily pain in her shoulders, constant pain in her
>    hips.   She has-experiences pain 50 percent of
>    waking time on her calves and thighs.   She has
>    constant pain in her wrists and intermittent pain
>    in her ankles.   She mentioned headaches
>    approximately three times a week as a result of
>    the, the TMJ condition she has, and migraine
>    headaches two to three times a month.   She's
>    mentioned she has frequent muscle spasms in all
>    parts of her body.  Just on those symptoms of pain
>    alone-this hypothetical person would have
>    occasional limitations in the ability to complete a
>    normal work day or work week because of these
>    symptoms of pain as well as occasional limitations
>    in the ability to complete a normal – to perform
>    activities within a schedule, maintain regular
>    attendance and be punctual within customary
>    tolerances.   If you added those two additional
>    limitations to the one I, I've given you, would
>    such a person be able to perform any of claimant's
>    past relevant work as she performed it?
>
>    A  No, she could not.

(T-428-430) The ALJ then refined the hypothetical to add to the
person with all of the above hypothetical criteria, but as a
younger individual and then as an individual closely approaching
advanced age.  In each instance the VE testified that she would not
have any skills that would transfer to other jobs nor be able to
perform any unskilled jobs in the regional or national economy (T-
428-430).  From this interchange, the Court can only take that the
ALJ disregarded all of the plaintiff's testimony regarding her
subjective symptoms, and those of the treating physicians where
their evidence conflicted with his conclusions, to arrive at the

finding that she retained the RFC to perform her past jobs as welfare examiner and employment specialist.

Further, the ALJ concluded that there is no evidence in the record that establishes that Barnett has been unable to return to her past relevant work, or that she has been disabled at any time on or subsequent to August 1, 1996. Therefore, the ALJ concluded that Barnett is not under a disability.

A review of the record as a whole demonstrates that the ALJ ignored a substantial part of the evidence, and gives no reasons for doing so.  The ALJ's decision cannot be supported by substantial evidence if he finds that claimant has the severe conditions of cervical disc fusion, degenerative disc disease, and fibromyalgia, but rejects all testimony and evidence of the limitations reasonably related to those conditions without any explanation of his reasons for doing so. Dioguardi v. Commissioner of Social Security, 445 F. Supp. 2d 288 (W.D.N.Y. 2006)(The ALJ committed legal error when she failed to assign any weight, or explain the weight she assigned, to the opinion of orthopedic surgeon... By not doing so, the ALJ deviated from one of the legal standards she was required to apply to [her] evaluation of the evidence and, at the same time, failed to set forth a crucial issue 'with sufficient specificity to enable [this Court] to decide whether the determination is supported by substantial evidence.' " Torres v. Barnhart, 2005 WL 147412, at 5, 2005 U.S. Dist. LEXIS

937, at *19 (E.D.N.Y. Jan. 24, 2005) (quoting <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir.1984)).  Failure to explain the weight assigned to a treating physician's opinions was not harmless).

In addition, the ALJ largely adopts the diagnoses of the treating physicians and consults, but then rejects any of Barnett's testimony of symptoms that are reasonably related to the diagnoses. When the Commissioner is evaluating a claim, he must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and ⋯ educational background, age and work experience." <u>Dumas v. Schweiker,</u> 712 F.2d 1545, 1550 (2d Cir.1983) (quoting <u>Miles v. Harris,</u> 645 F.2d 122, 124 (2d Cir.1981)).  If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. <u>Schisler v. Sullivan,</u> 3 F.3d 563, 567 (2d Cir.1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(defendant).  Her primary physician treated her for depression, migraines, etc, including with antidepressants (T-128).  The treating specialist treated plaintiff for fibromyalgia, including by prescribing pain killers, anti-inflammatories and sleep medication (T-Ex.16F).

The ALJ failed to assess or make findings related to the side affects of the multiple medications required to keep the conditions

under even marginal control. 20 C.F.R. § 404.1529(c)  He also
failed to address any evidence of cognitive or emotional effects
even though the record is replete with indications of long standing
depression, and more recent complaints of lethargy, vertigo, nausea
and inability to concentrate because of the side effects of
medications required to control all complaints found by treating
physicians and cited to by Commissioner's memo (T-15).

    III. <u>Moreover, the ALJ erred by not properly developing the
medical record with respect to Barnett's conditions.</u>

    The ALJ failed to examine the effects of the combination of
plaintiff's various conditions and the symptoms thereof.  The ALJ
has a "duty to develop the factual record, regardless of whether
the claimant is represented by legal counsel. <u>Shaw v. Chater</u>, 221
F.3d 126, 134 (2d Cir. 2000) (citing <u>Schaal v. Apfel,</u> 134 F.3d 496,
505 (2d Cir.1998) ("[E]ven if the clinical findings were
inadequate, it was the ALJ's duty to seek additional information
from [the treating physician] <u>sua sponte.</u>"); <u>Pratts v. Chater</u>, 94
F.3d 34, 37 (2d Cir. 1996) ("[T]he rule in our circuit [is] that
'the ALJ, unlike a judge in a trial, must himself affirmatively
develop the record' in light of 'the essentially non-adversarial
nature of a benefits proceeding....' [E]ven when, as here, claimant
is represented by counsel.") (internal quotations omitted)).

    It is the clear rule in the Second Circuit that "all
complaints ⋯ must be considered together in determining ⋯ work
capacity." <u>DeLeon v. Secretary of Health and Human Services,</u> 734

F.2d 930, 937 (2d Cir.1984). It is improper to determine a claimant's work capacity based solely upon an evaluation of the severity of the claimant's individual complaints. <u>Gold v. Secretary of Health, Educ. and Welfare,</u> 463 F.2d 38, 42 (2d Cir.1972). Here, the ALJ failed to develop the record regarding the combined affects of Barnett's limited mobility, pain, limited concentration, headaches and depression upon her ability to be gainfully employed. He questioned Barnett regarding the impact of her medications on her lack of concentration, but then seems to have disregarded her testimony entirely, not addressing it in his findings. He also disregarded the medical evidence of such impact. If he found the evidence faulty in some manner, he does not address it. And, as discussed above, if he did not find evidence persuasive, he was obligated to indicate on what basis he disregarded the treating physicians' evidence. He was also obligated to develop the record on the issue to the extent that he relied on something other than the testimony of claimant, and the evidence of statements by her husband and treating physicians.

The Court finds that the Commissioner's position incorporates the same infirmities as the ALJ's decision. The Commissioner's Memorandum fails to reconcile the accepted diagnoses of the treating physicians with the rejection of all evidence of the severity of the symptoms associated therewith. It fails to explain how the ALJ could make the finding he did in light of the evidence he had to rely upon to make those findings.

IV.   <u>The ALJ erred by not applying the proper standard in assessing</u>
      <u>Barnett's credibility.</u>

The ALJ's residual functional capacity finding based on an adverse credibility determination with respect to claimant's subjective pain complaints was not supported by substantial evidence.  <u>Janas v. Barnhart</u>, 451 F.Supp.2d 483 (W.D.N.Y.,2006). Although many of claimant's symptoms were subjective, the record is devoid of any suggestion by claimant's physicians that she did not have the pain, fatigue and confusion, or that it was not reasonably related to her disorders.  No treating physician ever questioned claimant's credibility regarding her complaints of pain, fatigue, and confusion, for which she was prescribed pain medications, including narcotics, and anti-inflammatory medications. Significantly, absent from the ALJ's decision was any discussion regarding the effect of claimant's fibromyalgia, which were supported by objective medical findings. Social Security Act, § 1614(a)(3)(A), (3)(C)(i), 42 U.S.C.A. § 1382c(a)(3)(A), (3)(C)(i).

In determining that plaintiff remained able to perform her past work as a welfare examiner and employment specialist, the ALJ discredited the testimony and evidence from both Plaintiff and her husband regarding plaintiff's subjective allegations of pain, fatigue and depression  (T-383-384).

While a plaintiff's subjective complaints are not alone sufficient to support a finding of disability, such complaints must

24

be accorded weight when they are accompanied by "evidence of an underlying medical condition" and an "objectively determined medical condition [which is] of a severity which can reasonably be expected to give rise to the alleged pain." Cameron v. Bowen, 683 F.Supp. 73, 77 n. 4 (S.D.N.Y.1987).  Here, significantly absent from the ALJ's hearing decision is any discussion regarding the effect of Plaintiff's fibromyalgia, which is supported by objective, medical findings.  The fact that plaintiff had achieved some relief of her symptoms at the time of the hearing does not negate but, rather, reinforces a finding that plaintiff suffered from an objective medical condition that "could reasonably be expected" to cause plaintiff's asserted pain.

Further, the Second Circuit has observed that "ALJs are specifically instructed that credibility determinations should take account of 'prior work history,' " and that "a good work history may be deemed probative of credibility." Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir.1998) (citing 20 C.F.R. § 416.929(c)(3); and Social Security Ruling 96-7p, 61 Fed. Reg. 34, 483, at 34, 486 (1996)).  See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir.1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").  In the instant case, the ALJ, rather than crediting plaintiff's work history, which included a twelve year period working for the County Social Welfare Office, as probative of Plaintiff's credibility regarding the extent of her asserted pain,

disregarded her work history in assessing her credibility.  The record, in fact, establishes that despite an inpatient psychiatric hospitalization as a result of a severe psychological trauma, plaintiff managed to maintain her employment (T-190-93).

The ALJ's wholesale discrediting of Barnett's subjective complaints strongly suggests the ALJ found it necessary to discredit such complaints to support his conclusion that plaintiff was not disabled and is contrary to the Second Circuit's statement that " 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.' " Mongeur, 722 F.2d at 1037 (quoting Gold, 463 F.2d at 41).

## CONCLUSION

The ALJ's findings are not supported by the record and therefore his decision cannot be upheld. Rivera, 717 F.2d at 1351. Moreover, I find that based upon the evidence contained in the record, the plaintiff is disabled as of August 1, 1996. Accordingly, the case is remanded to the Commissioner for calculation and payment of benefits. The Commissioner's motion for judgment on the pleadings is denied.  The plaintiff's motion for remand is granted for proceedings consistent with this decision.

**SO ORDERED.**

S/ Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:     February 12, 2007
           Rochester, New York